# DECEMBER, 1911.

---

### FLAKE BARBER v. THE STATE.

No. 1348.  Decided December 6, 1911.

Rehearing denied January 10, 1912.

**1.—Forgery—Indictment—Act of Another.**

In an indictment for forgery it is not necessary to allege that the forged instrument purports to be the act of the party injured, or to name the person whose act such instrument purports to be.

**2.—Same—Indictment—Innuendo Averments—Obligation.**

It is not required that the instrument if true should in fact discharge or defeat an obligation; it will be the subject of forgery if its tendency is such; and where the instrument alleged in the indictment was vague and indefinite, but by explanatory averments it is alleged that it was intended if genuine to have operated as a credit on a certain note, the indictment was sufficient.

**3.—Same—Evidence—Instrument.**

Upon trial of forgery, there was no error under the facts in admitting in evidence the instrument upon which the indictment was based.

**4.—Same—Evidence—Receipt—Explanation.**

Where, upon trial of forgery of a certain receipt the State was permitted to introduce testimony with reference to the business relations between defendant and prosecutrix, and with reference to a certain civil suit by the latter against the defendant involving a note which said receipt was intended to discharge, and the abstraction of said note by the defendant, etc., there was no error in admitting all this testimony in connection with said receipt.

**5.—Same—Evidence—Comparison of Handwriting—Opinion of Witness.**

Upon trial of forgery, where the State's witness testified that he was familiar

with the handwriting of the prosecutrix, etc., and that the alleged receipt was not in her handwriting, but that it bore evidence of having been traced from a genuine signature of prosecutrix, there was no error from all the testimony in the case.

### 6.—Same—Pleading in Civil Suit—Evidence.

Upon trial of forgery, there was no error in admitting in evidence the answer filed by the defendant in a certain civil suit involving the instrument or receipt upon which the prosecution was based.

### 7.—Same—Evidence—Comparison of Handwriting.

Upon trial of forgery, where the State claimed that the forgery was accomplished by tracing over the genuine signature of prosecutrix, and defendant's witness claimed that the same was a genuine signature by comparing it with admitted signatures, there was no error to have said witness write his own name on different pieces of paper, and by comparison show that no one would space letters in making his signature in the same way if he signed his name twice.

### 8.—Same—Evidence—Animus of Witness.

Where the rejected testimony did not show that the witness attacked was talking about the defendant, to show animus, there was no error.

### 9.—Same—Charge of Court—Accomplice.

Where the court's charge on accomplice testimony was according to precedent, and other objections to the charge of the court did not point out any error, there was no reversible error.

### 10.—Same—Argument of Counsel.

Where no written charges were requested, and the court admonished the jury not to consider the remarks of counsel complained of, there was no reversible error.

Appeal from the District Court of Palo Pinto. Tried below before the Hon. W. J. Oxford.

Appeal from a conviction of forgery; penalty, five years' imprisonment in the penitentiary.

The opinion states the case.

*John W. Moyers, E. B. Ritchie,* for appellant.—On question of insufficiency of indictment: King v. State, 27 Texas Crim. App., 567; Cagle v. State, 44 S. W. Rep., 1097; Womble v. State, id., 827; Daud v. State, 31 S. W. Rep., 376; Overvy v. State, id., 377; Carder v. State, id., 678; Simms v. State, 22 S. W. Rep., 876; Caffey v. State, 36 S. W. Rep., 82; Crawford v. State, 50 id., 378; Black v. State, 61 id., 478; Crayton v. State, 73 id., 1046; Beldon v. State, 50 Texas Crim. Rep., 565, 99 id., 563.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was convicted of the offense of forgery, and sentenced to five years' confinement in the penitentiary.

The indictment in this case reads as follows: "The grand jurors for the county of Palo Pinto, State aforesaid, duly organized as such at the March term, A. D., 1910, of the District Court of said county, upon their oaths in said court, present that Flake Barber, on or about

the 23d day of September, One thousand nine hundred and seven, and anterior to the presentment of this indictment, in the county of Palo Pinto and State of Texas, did then and there unlawfully, without lawful authority, and with intent to injure and defraud, did unlawfully and fraudulently make a certain false instrument in writing, which said false instrument is to the tenor as follows:

September 23, 1907.

This is to apply on note dated June 26, 1907, due June 26, 1909, for $1000.00, bearing 8%.

Mrs. Nona Shannon.

Witness,
    J. H. Dodd.

"The said Flake Barber, at the time he made such false instrument in writing, was indebted to the said Mrs. Nona Shannon, as evidenced by his promissory note in favor of the said Mrs. Nona Shannon, for one thousand dollars, drawing interest at the rate of eight percent per annum from date, and dated June 26th, 1907, and falling due June 26th, 1909, and being the same note mentioned in the said false instrument in writing, and the said false instrument in writing, when it was so made by the said Flake Barber, was intended by him as a receipt against the above said promissory note, and in settlement of the same to ·the extent of one thousand dollars, and in fact, said false instrument in writing, if it had been true, would have operated as a credit against said promissory note and indebtedness to the extent of one thousand dollars, and would have defeated, diminished and discharged said pecuniary obligation and indebtedness to the extent of one thousand dollars, against the peace and dignity of the State."

The appellant in this case filed a motion in arrest of judgment on the ground that the indictment is insufficient on the following grounds: (1) "That it does not allege that said instrument to be the act of Mrs. Nona Shannon, and does not name whose act such instrument purports to be." This is not necessary in an indictment for forgery. (Labbaite v. State, 6 Texas Crim. App., 257; Carter v. State, 55 Texas Crim. Rep., 43; Allen v. State, 44 Texas Crim. Rep., 63.) (2) "That the instrument is not such an instrument as the making of which would constitute forgery." The instrument is very vague and indefinite, but by explanatory averments, it is said that the instrument was intended to, and if genuine, would have operated as a credit on a note due by appellant to Mrs. Nona Shannon. With these innuendo averments, we think such an instrument can form the basis for an indictment for forgery. In Fonville v. State, 17 Texas Crim. App., 382, Judge Hurt says: "It is not required that the instrument, if true, should in fact discharge or defeat the obligation; it will be the subject of forgery if its tendency is such." And in Branch's Criminal Digest the rule is laid down thus: "Ordinarily, a fair test of whether

an instrument is the subject of forgery is, would the holder of same, if the same were true, be enabled to maintain or defeat a civil suit by such instrument?" citing Scott v. State, 40 Texas Crim. Rep., 107; Daud v. State, 34 Texas Crim. Rep., 460; Gray v. State, 44 Texas Crim. Rep., 477.

In this case Mrs. Shannon brought suit on the note for $1,000, dated June 26, 1907, due June 26, 1909, and as shown by the evidence in this case, defendant plead that he had paid the note in full, and that Mrs. Shannon had executed and delivered the instrument on which this prosecution is predicated as a receipt in full payment of said note. The other grounds in the motion in arrest of judgment all hinge around the above two propositions. Inasmuch as the innuendo averments properly set forth the object and intention in executing said instrument, and as the evidence shows that defendant attempted to so use it, the court did not err in overruling the motion in arrest of judgment.

1. Appellant objected to the introduction of the instrument in evidence, because said instrument is unintelligible and meaningless, and it was not shown to have been made or executed in evidence. Under the evidence in this case the court did not err in admitting it in evidence.

2. It appears from the evidence that at one time, Mrs. Shannon had defendant transacting some business for her, and at that time, placed in defendant's hands, $1,000, to be held by him as a forfeit on a land trade. The trade was not completed, and Mrs. Shannon instructed defendant to use the $1,000 in his hands to pay a note she was due Cicero Smith, and defendant did so, and it was on the same date that the alleged receipt bears date. Defendant had testified in the civil suit, as shown by the evidence, that this $1,000 was his individual funds, and not the funds of Mrs. Shannon, and it was for paying this note that Mrs. Shannon had executed and delivered to him the instrument on which this prosecution was based, as a receipt for $1,000 to be applied on a note due by him to her. There was no error in permitting a witness to state what had been the testimony of this defendant in the civil suit, insofar as it related to this transaction.

Defendant also objected to the testimony of P. S. Carter, an attorney, who testified that Mrs. Shannon had given to him for collection, the note given to her by this defendant. Defendant had plead in the civil suit, that at the time Mrs. Shannon had executed the receipt, she had also delivered to him his note, and he was then in possession of same. It was proper for the court to permit Mr. Carter to testify, that long subsequent to this time, Mrs. Shannon was in possession of defendant's note, and had delivered it to him for collection, and that same had been abstracted from his office without his knowledge or consent.

Defendant objected to the witness, W. H. Penix, being permitted to testify "that in his opinion, the signature to the alleged receipt

(the instrument described in the indictment), was a forgery, and that Mrs. Shannon's name had been traced thereon from the signature to the Cicero Smith note." The court, in approving the bill, states: "Which is done with the explanation, that the witness testified that he knew Mrs. Shannon's signature, had been her attorney for some time, and had often seen her write, and that the alleged receipt, described in the indictment, and then held in his hand, was not Mrs. Shannon's signature, but that it bore evidence of having been traced from Mrs. Shannon's signature to the Cicero Smith note, which note and the alleged receipt were by the defendant, Flake Barber, produced together and put in evidence in a certain civil suit."

By order of the court, the original receipt and note have been sent to this court for our inspection, and in the light of the witness' testimony, and the explanation of the court, we think the testimony was admissible. What the witness really testified is as follows:

"I am a practicing lawyer, a member of the firm of Penix & Eberhart, and reside at Mineral Wells. I have known Mrs. Nona Shannon Perry since the spring of 1909. I am also acquainted with the defendant, Flake Barber.

"I was attorney for Mrs. Perry in a civil suit against Flake Barber, the defendant in this cause, tried at the September term, 1909, of the District Court of Palo Pinto County. This civil suit involved amongst other things, the collection of a note for one thousand dollars, alleged in the suit to have been executed by the defendant, Flake Barber, to Mrs. Nona Shannon for borrowed money, the said note being dated June 26, 1907, and due two years after date and bearing eight percent interest per annum.

"Upon the trial of this civil cause, in September, 1909, as stated, the defendant, Flake Barber, testified as a witness in his own behalf, and amongst other things, offered and gave in evidence the receipt which I here identify, and which reads as follows:

September 23, 1907.

This is to apply on note dated June 26, 1907, due June 26, 1909, for $1,000.

Mrs. Nona Shannon.

Witness,
J. H. Dodd.

"Defendant, also as a part of his testimony in said civil cause, offered and exhibited in evidence, a note which had been executed by Mrs. Nona Shannon to the order of Cicero Smith, for $1,000, said note dated September 12, 1907, and due on or before Jan. 1, 1908, given for the purchase price of some Mineral Wells property. I here identify said note shown me as the same note so exhibited by defendant in the civil suit, in connection with his testimony therein.

"On the trial of said civil cause, defendant testified that the receipt

so exhibited by him, and quoted just above, was signed by Mrs. Shannon in his, defendant's office, in Mineral Wells, which, as I now remember, was located over Yeager's drugstore,, and defendant further testified that Mrs. Nona Shannon signed said receipt in the presence of J. H. Dodd, as a witness thereto, and further testified that it was a receipt for this note of $1,000 which he had borrowed theretofore from Mrs. Shannon. Defendant also testified that he had borrowed $1,000 from Mrs. Shannon, and that he had executed to her a note for that amount, and that said note was dated June 26, 1907, and was due two years after date, with interest at eight percent per annum. He further testified that he (defendant) went down to the bank of Mineral Wells on the date of this receipt, which is the 23d of September, 1907, and there paid Cicero Smith $1,000, and took this note up, (this Cicero Smith note) and that afterwards Mrs. Perry came into his office and gave him this receipt in question in payment for the note dated June 26, 1907. In his testimony on said civil suit, defendant referred to this instrument or receipt in question, as a receipt, and called it a receipt in his reference to it, and stated that Mrs. Shannon gave him this receipt for the note he owed her, dated June 26, 1907, and due two years after date, and defendant also gave said receipt or instrument in evidence before the court.

"I here also identify the check for $1,000, dated September 23, 1907, on the Bank of Mineral Wells, payable to order of Cicero Smith. This check was also exhibited in evidence on the trial of said civil suit by the defendant. In his testimony in said civil suit, defendant said that he gave this check to Cicero Smith and took up this Cicero Smith note for $1,000 as a result of giving the check.

"I am acquainted with the signature of Mrs. Shannon, having seen her write and having observed her signature to various instruments of writing. As a notary, I have taken her acknowledgement to a number of instruments, deeds, etc.

"I recognize the signature of Mrs. Nona Shannon on the Cicero Smith note as her genuine signature. In the main, the signature on the receipt in question and the signature on the Cicero Smith note are very much alike. If the two signatures were shown me together, and there were no other things connected with it, I might say they were the same; but there are other matters connected with it that make me say the other way. In my opinion, the signature on the receipt in question is not the genuine signature of Mrs. Nona Shannon. The signature is executed with a pencil, and the lines are all heavy. When the signature on the receipt, made in pencil, as stated, is placed over or superimposed on the signature of Mrs. Nona Shannon on the Smith note, they fit in every detail. The pencil signature in some of its letters shows a double line, or a tracing, I might call it, and this is apparent to the eye in the letters S and h and the n in the word Shannon, and it is especially plain to the eye in the letter S and in the letter N. This pecularity is observable in a number of the letters,

and I do not think it possible to make these lines as they appear in the pencil signature, with one stroke of the pencil, unless one used a double pointed or a forked pencil. The two signatures are exactly the same length, and the space between the parts of the name is the same in both signatures. The letters are the same height in all respects."

We have copied this much of the testimony that the contention in this case may be made plain, and it will be seen what the witness really testified was "that the pencil signature (to the receipt) in some of its letters, shows a double line, or tracing, and this is apparent to the eye."

3. The court did not err in admitting in evidence the answer filed by this defendant in the civil suit, wherein he alleged that the payment of the $1,000 note, and the execution and delivery of this receipt, and matters relating to that transaction as alleged by him, it being sworn to by defendant, nor in permitting the witnesses to state the testimony of defendant in that suit insofar as it related to the instrument herein relied on as a basis to support this charge of forgery.

4. The defendant called as a witness, H. M. Coleman, to give expert testimony as to whether in his opinion the signature of Mrs. Shannon was a genuine signature, comparing it with her admitted signature to other instruments. On cross-examination, the State asked the witness to write his own name on three distinct pieces of paper, and then compare them, supposedly for the purpose of showing that no person would space the letters and make their signatures identical in every respect in signing his name twice. As qualified by the court, this presents no error.

5. In bill No. 9, defendant shows he called to the witness stand, J. T. Lide, who testified that he heard Dodd, a State witness, state that "he was going to send the d—m s—n of a b—h to the penitentiary." On cross-examination, this witness stated he did not know to whom Dodd had reference to, nor whom he was talking about, when the court excluded the testimony of the witness Lide. In this there was no error. To render this testimony admissible, it was necessary to show that the witness, Dodd, was talking about this defendant.

6. This disposes of all the bills of exception insofar as the evidence is concerned. The defendant requested no special charges, and the court's charge fairly submits all the issues arising in the case. The charge on accomplice testimony is drawn in accordance with the form heretofore approved by this court in Campbell v. State, 57 Texas Crim. Rep., 301, 123 S. W. Rep., 583; King v. State, 57 Texas Crim. Rep., 363, 123 S. W. Rep., 135; Brown v. State, 57 Texas Crim. Rep., 570, 124 S. W. Rep., 101. The other portions of the motion, complaining of the court's charge, are equally without merit, and, in addition thereto, are too general to be considered, merely stating that "the court erred in that part of his charge wherein the jury are charged as follows:"

It is not attempted to point out the error, if error there be, and therefore can not be considered by this court.

7.   In his ninth bill of exceptions, appellant complains that the district attorney said in his closing argument: "This is the way they try to discredit and besmirch a widow woman in order to protect a high-handed criminal." The court endorsed on the bill: "Approved with the explanation that the court duly admonished the jury not to consider the remark of the district attorney complained of in the bill, and defendant's counsel requested no written charge, withdrawing said remark from the jury. If they had, the court would have given it." As thus presented, it is a matter which this court will not consider.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied January 10, 1912.—Reporter.]